IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 26, 2013

## STATE OF TENNESSEE v. ANDREW REGINALD MACKINNON

**Direct Appeal from the Criminal Court for Sevier County**
**No. 13164-II    Richard Vance, Judge**

_____

**No. E2012-00594-CCA-R3-CD - Filed May 29, 2013**

_____

In 2007, a Sevier County jury convicted the Defendant, Andrew Reginald Mackinnon, of violating the implied consent law. The Defendant appealed, and this Court vacated the judgment, remanding the case for the trial court to determine whether the Defendant violated the implied consent law. *State v. Andrew Reginald MacKinnon*, No. E2009-00093-CCA-R3-CD, 2011 WL 1460167 (Tenn. Crim. App., at Knoxville, Mar. 30, 2011), *no Tenn. R. App. P. 11 application filed*. On remand, the Defendant filed a motion to dismiss and a motion to suppress, both of which the trial court denied after a hearing. After a non-jury trial, the trial court determined that the Defendant had violated the implied consent law. The trial court ordered the Defendant's license be revoked for a period of one year. On appeal, the Defendant contends that the trial court erred when it: (1) denied his motion to dismiss; and (2) denied his motion to suppress. After a thorough review of the record, the briefs, and relevant authorities, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Bryan E. Delius (on appeal) and Bryce W. McKenzie (at trial and remand hearing), Sevierville, Tennessee, for the Appellant, Andrew Reginald Mackinnon.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; James Bruce Dunn, District Attorney General; and Greg Eshbaugh, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

## A. Background and Direct Appeal

This case arises from a traffic stop that occurred on December 28, 2007. As a result of this stop, the Defendant was charged with driving under the influence ("DUI") and violation of the implied consent law. Both issues were submitted to the jury. The jury acquitted the Defendant of DUI but found him "guilty" of violating the implied consent law. The trial court stated that it "approve[d] the verdict" and revoked the Defendant's driver's license.

The Defendant appealed his conviction. In our opinion on his appeal, this Court summarized the facts presented at trial as follows:

At the trial, Pigeon Forge Police Officer Lynn Miller testified that on December 28, 2007, he parked his patrol car in the median on Highway 441 near Ogle Drive around 9:00 p.m. The speed limit in the area was thirty-five miles per hour. He said he saw a car traveling south at a high rate of speed and passing other vehicles "pretty much like they were sitting still." He pulled into traffic and activated his patrol car's blue lights, which automatically turned on his car's video camera. He said that the speeding car pulled to the side of the road and stopped and that he approached the driver, who was the Defendant. He said that the Defendant's speech was "kind of slow, slurred," that the Defendant's eyes were bloodshot, and that he smelled alcohol inside the Defendant's car. He said he smelled alcohol on the Defendant when the Defendant got out of his car. He said he administered the walk-and-turn and one-legged stand field sobriety tests to the Defendant. Based upon the Defendant's performance on the tests, Officer Miller arrested him. He said that he drove the Defendant to the police department and that he informed the Defendant about the implied consent law. He said that he read an implied consent form to the Defendant and that he gave the form to the Defendant to read. He said the Defendant refused to submit to a blood or breath test. The State played the videotape from Officer Miller's patrol car for the jury.

On cross-examination, Officer Miller testified that he did not use radar to determine the speed of the Defendant's car. He said he "made a guess" and estimated the car's speed to be fifty-two miles per hour. He acknowledged that when he turned on his patrol car's blue lights, the Defendant stopped promptly, produced all requested documents, and was cooperative. He said the Defendant did not stagger or sway when he got out of the car.

The Defendant testified that on the night of December 28, 2007, he

-2-

drove to a Walgreens Pharmacy in Pigeon Forge with a prescription for his wife, who was very sick. He said he dropped off the prescription and spoke with the pharmacist. He said the pharmacist understood the urgency and told him to return in one hour. He said that he drove to the Smoky Mountain Brewery and that he ate a sandwich and drank one sixteen-ounce beer. He said he was at the restaurant for about twenty minutes. He said that he did not wait for his bill and that he left twenty dollars on the table. He said that as he drove to pick up his wife's medicine, he saw a patrol car's blue lights and pulled over. He said that he suffered from ringing in his ears, that it affected his hearing and speech, and that he was nervous because his wife needed her medication. He said that after he was arrested, Officer Miller asked him to submit to a breath test. The Defendant said he requested to speak with "somebody" about whether he should submit to the test. He said that he was not concerned he had consumed too much alcohol to drive and that he was not intoxicated.

On cross-examination, the Defendant testified that he did not believe he was speeding and noted that Officer Miller did not give him a speeding ticket. He acknowledged that Officer Miller read an implied consent form to him, that he looked at the form, and that he considered whether he should submit to the test. He said he decided to refuse to submit to a blood or breath test.

Thomas Ham, a licensed private investigator, testified that the pavement where Officer Miller administered the field sobriety tests was uneven and that the Defendant's everyday speech was "kind of stuttered and kind of nasally slurred speech." Gary Runyan, a pharmacist at the Pigeon Forge Walgreens, testified that the Defendant left a prescription in the drive-thru on the night of December 28, that he spoke with the Defendant for about ten minutes, and that the Defendant did not appear to be intoxicated.

Kelly Merriman testified that she was employed at the Defendant's restaurant. She said that on the night of December 28, the Defendant called her and asked her to sit with his wife while he drove to Walgreens. She said that she went to the Defendant's house, that she helped the Defendant settle his wife into bed, and that she stayed with her while the Defendant drove to the pharmacy. She said she did not smell alcohol on the Defendant. Based on the foregoing evidence, the jury acquitted the Defendant of DUI but found him guilty of violating the implied consent law.

*MacKinnon*, 2011 WL 1460167, at *1-2.

In his appeal to this Court, the Defendant contended that the trial court erred when it denied his motion to suppress and also that the jury instructions for the charge of violation of the implied consent law were insufficient. *Id.* at *1. After review, this Court, in a split decision, reversed and remanded the case because the trial court failed to determine the issue of the implied consent violation, submitting the issue instead to the jury. *Id.* We held that the applicable statute gave the trial court, and not a jury, "the authority for determining whether the noncriminal implied consent law was violated." *Id.* at *3. We further concluded that we should not allow the decision to be delegated to a jury, in contravention of the statute. Finally, we held that the trial court's approving of the jury's finding did not render harmless the court's lack of a proper finding. *Id.*

This Court addressed the Defendant's other issues, concluding first that the Defendant had waived the issue of whether the trial court erred when it denied the Defendant's motion to suppress by not providing an adequate record. *Id.* at 5-6. With regard to the Defendant's issue about how the trial court instructed the jury, we concluded that this issue was rendered moot by our holding that the trial court, and not the jury, must make the determination of whether the implied consent law was violated. *Id.* at *6.

## B. Remand

After this Court remanded the case to the trial court, the Defendant filed a motion to dismiss and a motion to suppress. In his motion to dismiss, he argued that the implied consent issue could not be addressed because the DUI had already been adjudicated. In his motion to suppress, he argued that the officer who stopped him did not have reasonable suspicion or probable cause to initiate the stop.

At a hearing on the two motions, the trial court first noted that this Court had ruled on the motion to suppress and that it saw no reason to "go against the Court of [Criminal] Appeals' finding on the suppression issue." The Defendant's attorney argued that this Court's ruling was based, in part, on the fact that he had first presented the issue on appeal and that, by vacating the judgment, the Defendant was entitled to present this issue to the trial court. The trial court stated, "That was one of the discussions but I'm holding right now that it was raised, ruled on, the Court of Criminal Appeals said he's not entitled to relief."

The trial court then addressed the Defendant's motion to dismiss. The Defendant's attorney contended that this Court's opinion held that the trial court was required to make the determination as to whether the Defendant violated the implied consent statute. The trial court expressed his belief that he had made that determination when he affirmed the action of the jury. The Defendant's attorney again cited our holding and argued that the implied consent statute required that the trial court make its determination as to whether a defendant

-4-

has violated the implied consent law "at the same time" as the finding of guilt. The Defendant's attorney went on to state that the trial court making a determination that the Defendant violated the implied consent law, after this Court had vacated the judgment, would not be "at the same time," as contemplated by the statute. The Defendant's attorney asked the trial court to dismiss the charges.

The trial court held:

My interpretation of what the Court of Criminal Appeals did essentially is to send it back for a new trial on that issue, not for me to make a determination on the facts of the case. I've already done that. I did that at the same time. When the jury has reported and I affirmed the findings of the jury and entered judgment of conviction against him, I did that. That's my view. The Court of Criminal Appeals disagreed and essentially we're back for a new trial, which would be a non-jury trial on the violation of implied consent. That's the way I understand what the [C]ourt held.

The trial court then set a date for a non-jury trial.

At the non-jury trial, the following occurred: The Defendant's attorney renewed his motion to suppress and motion to dismiss, providing the trial court with case law in support of the motions. The trial court again denied both motions. The State called Officer Lynn Miller, who testified that his duties included DUI enforcement, for which he had received specialized training.

Officer Miller testified that he was sitting in his patrol car in the median facing west on US Highway 441, going over paperwork. It was dark and raining "a little bit," leaving the roads wet. Miller described the traffic as "heavy" when he observed a black vehicle passing all the other vehicles.

Officer Miller testified that he had been trained in radar identification, a forty-hour school. He said that, at the conclusion of the class, he was required to observe 200 vehicles and to be within two miles per hour when estimating their speed. The State asked Officer Miller to estimate the Defendant's speed, and the Defendant's attorney objected, saying that the officer was not an expert and that an expert opinion would be required. The trial court overruled the objection, noting that the officer had "specialized training." Officer Miller then estimated that the Defendant was traveling at 53 miles per hour when the officer observed him. The speed limit for that area of the highway was 35 miles per hour.

Officer Miller testified that he activated his emergency lights to initiate a traffic stop

of the vehicle, and the vehicle stopped near Ogle Drive. The officer identified the Defendant as the driver of the vehicle and stated that he was concerned when he spoke with the Defendant because the Defendant had slurred speech and there was an "odor of an alcoholic beverage" emanating from his vehicle.

The Defendant told the officer that he had consumed a single beer. Officer Miller asked the Defendant to perform some field sobriety tasks, and the Defendant complied. The officer opined that the Defendant performed "poorly" on the tasks. Based upon the Defendant's performance, the way he was driving, and other factors, the officer did not believe it was safe to allow the Defendant to drive. Accordingly, he placed the Defendant under arrest for DUI.

On the way to the police station, Officer Miller asked the Defendant to participate in a Breathalyzer blood test. The Defendant told Officer Miller that he could not decide whether to participate and then ultimately said he would not undergo such a test. The officer read the Defendant the implied consent waiver form, and the Defendant indicated "no" on the form, declining the test.

During cross-examination, Officer Miller testified that he was in a marked patrol car on the evening that he stopped the Defendant. He said his car was parked perpendicular to the lane in which the Defendant was traveling. The officer testified that, as part of his routine, he "automatically" guessed or estimated the speeds of other vehicles. Further, part of his radar training required him to "constantly look at" a car and then his radar to determine the speed a vehicle was traveling.

Officer Miller said that he did not see the Defendant commit traffic violations other than speeding in dangerous conditions. The officer expounded that the Defendant did not interfere with any other vehicles, maintained his lane of travel, and was not swerving. The officer said the Defendant pulled over appropriately when the officer activated his emergency lights. The officer said the Defendant waited in his car until the officer approached and responded appropriately to the officer's questions. He produced his license and insurance card without fumbling.

Officer Miller said that he asked the Defendant to remain in the car until a back up officer arrived. Officer Thigpen arrived, and he and Officer Miller discussed administering field sobriety tasks. Officer Miller testified that, when he asked the Defendant to exit his car, the Defendant did not stumble and walked normally, following the officer's instructions. The Defendant told the officer that his wife was ill and had been released from the hospital earlier that day. He said to the officer that he was going to Walgreens to pick up her medication.

The officer said he saw indications of impairment when the Defendant performed field sobriety tasks. The officer agreed that the field sobriety tasks are best performed on a flat, level, well-lit surface. He agreed he could have transported the Defendant to another location, like a nearby shopping center or motel, to perform the tasks. He, however, deemed such action unnecessary.

Officer Miller testified he administered the "Walk and Turn Test," asking the Defendant to take nine steps, touching heel to toe each step. The officer could not recall how the Defendant performed on that test. The officer said he next gave the Defendant, who was fifty years old, six feet tall, and weighed 240 lbs, the "One Leg Stand" test. The Defendant counted properly by one thousands and did not miss or skip any numbers. Officer Miller said the Defendant placed his foot down between twenty-four and twenty-five. The officer was unsure how much time had expired between the time he began the test and the time the Defendant put down his foot. Officer Miller said he also administered the "Horizontal Gaze Nystagmus" test.

Officer Miller said that, after the tests, he arrested the Defendant, who was compliant and cooperative. Officer Miller said the Defendant did not need assistance getting into the officer's patrol car or getting out once they were at the police station. The officer said the Defendant was "very unsure" when he answered questions but never gave him an incorrect response. The officer said he discussed with the Defendant on the way to the police station the Breathalyzer test. At the police station, the Defendant expressed uncertainty about whether to perform the Breathalyzer test. The Defendant ultimately declined the test.

During redirect examination, Officer Miller testified that the Defendant's eyes were watery and bloodshot, indicating possible impairment. He said that, when the Defendant exited his vehicle, the odor of alcohol was still emanating from the Defendant.

Officer Miller then viewed the videotape of the Defendant performing his field sobriety tasks. He testified that the Defendant started the test too soon, took a step sideways, and raised his arm, all of which were clues of intoxication. After watching the video of the "One Leg Stand" test, the officer testified that the Defendant put his foot down and also swayed side to side.

Officer Miller further testified that he had learned in training that speed and reckless driving could be an indicator that someone is driving under the influence.

During recross examination, Officer Miller testified that the Defendant told him he was in a hurry because his wife was ill. The Defendant also advised the officer that he was hard of hearing.

At the conclusion of the trial, the trial court found:

The Court has listened and watched the evidence in this hearing, as well as the exhibits that were filed. The issue for the court is whether or not [the Defendant] violated the implied consent law on this occasion by refusing an alcohol test. The elements of that are, of course, first of all, an officer must have probable cause to believe that a person is under the influence of alcohol or some other substance and upon being placed under arrest to be advised of their rights to take or refuse a breath or blood test and to be advised of the consequences of refusal, that is the loss of license, and it's very specific in the exhibit, the document, Exhibit 3, implied consent form, which the officer testified he read word for word verbatim to him, was checked that he refused the test.

From all the evidence in the case, the Court finds that the officer had probable cause to stop the vehicle which [the Defendant] was operating for speeding. The officer testified that he had specialized training [at] radar operator school in estimating speed[,] that in that course . . . he was required to accurately estimate the speed of a moving vehicle within plus or minus two miles per hour. He estimated the [D]efendant's speed on this occasion at 53 miles per hour in a 35 mile per hour zone. He also testified that there was fairly heavy traffic, that there was a flow of traffic, and that the [D]efendant was operating at a much higher rate of speed in the outside lane, so I find that he did have probable cause to stop this vehicle. He observed the violation of exceeding the speed limit committed in his presence.

The Court further observed the video and heard the testimony of this officer with respect to the basis for his determination that he was of the opinion that [the Defendant] was under the influence of alcohol. He detected the odor of an alcoholic beverage. He testified that his eyes were blood shot and glassy, that his speech was slurred, that during the field sobriety test that he did not follow directions, that he started too soon on the Nine Step Walk and Turn, that he lost his balance, he raised his arms. And the Court observed on the return trip of the nine steps that he stepped his left foot off to the side to regain his balance on his way back, that while he held his foot on the One Leg Stand for 25 second count that he testified that he swayed from side to side and then did put his foot down. From all of these things the officer testified that in his opinion and based on his experience and training that [the Defendant] was under the influence of an intoxicant, that it was unsafe for him to operate a motor vehicle, that after having been advised of his rights to make or refuse a

-8-

blood or breath test that [the Defendant] refused, from all of which the [C]ourt finds that [the Defendant] did violate the implied consent law and the [C]ourt will enter that judgment finding that he is in violation of the implied consent law, and order that his driving privileges be suspended for a period of one year, and ordered to pay the court costs.

It is – again, I'll make the observation that the Court would find these things beyond a reasonable doubt, as did the jury find, as did the Court previously approve. Hearing again the testimony, seeing the evidence, the [C]ourt is still of the opinion that [the Defendant] is guilty of violating the implied consent law, not only by a preponderance of the evidence but by beyond a reasonable doubt . . . standard.

The Defendant filed a motion for new trial, which the trial court denied. The Defendant now appeals the judgment of the trial court.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it: (1) denied his motion to dismiss; and (2) denied his motion to suppress.

### A. Motion to Dismiss

The Defendant contends that the trial court erred when it denied his motion to dismiss because the applicable statute requires that the trial court's determination of guilty be "at the same time" as the resolution of the underlying DUI charge. The Defendant posits that, because a jury had previously found him not guilty of the DUI charge, the trial court lost statutory authority to enter a judgment against the Defendant for violating the implied consent law. The State counters that the Defendant failed to establish that the trial court lacked authority to determine whether the Defendant had violated the implied consent law. We agree with the State.

In 2007, the year applicable to the Defendant's conviction, Tennessee Code Annotated section 55-10-401(a)(1), the DUI statute, provided, in pertinent part, that "[i]t is unlawful for any person to drive or to be in physical control of any automobile . . . on any of the public roads and highways of the state . . . while . . . [u]nder the influence of any intoxicant[.]"

The implied consent law stated that:

[a]ny person who drives a motor vehicle in this state is deemed to have given

consent to a test or tests for the purpose of determining the alcoholic content of that person's blood . . . . However, no such test or tests may be administered pursuant to this section, unless conducted at the direction of a law enforcement officer having reasonable grounds to believe the person was driving while under the influence of alcohol[.]

T.C.A. § 55-10-406(a)(1) (2006) (amended 2008, 2009, 2010, 2012). Before conducting any such test, a law enforcement officer "shall . . . advise the driver that refusal to submit to such test will result in the suspension of the driver's operator's license by the court . . . ." T.C.A. § 55-10-406(a)(2).

If a person is placed under arrest and thereafter asked to submit to a test, advised of the consequences, and refuses to submit, the test shall not be given. T.C.A. § 55-10-406(a)(3). The "person shall be charged with violating" the implied consent law. *Id.* The statute further states:

The determination as to whether a driver violated the provisions of [the implied consent law] shall be made at the same time and by the same court as the one disposing of the offense for which such driver was placed under arrest.

T.C.A. § 55-10-406(a)(3) (2006).[1] A conviction pursuant to this statute is civil in nature unless the driver was driving while his or her license was suspended or revoked because of a previous DUI or other enumerated driving offense. T.C.A. § 55-10-406(a)(3).

Other cases by this court have concluded that a jury's finding that a defendant violated the implied consent law was proper. *State v. Lee Stanley Albright*, No. E2007-02671-CCA-R3-CD, 2008 WL 5130691, at *4 (Tenn. Crim. App., at Knoxville, Dec. 8, 2008); *cf. MacKinnon*, 2011 WL 1460167, at *3 (concluding that the trial court, rather than a jury, has the authority to determine whether a violation of the noncriminal implied consent law

---

[1]This code section was modified in 2010 to read:

The determination as to whether a driver violated [the implied consent law] shall be made at the driver's first appearance or preliminary hearing in the general sessions court, but no later than the case being bound over to the grand jury, unless the refusal is a misdemeanor offense in which case the determination shall be made by the court which determines whether the driver committed the offense; however, upon the motion of the state, the determination may be made at the same time and by the same court as the court disposing of the offense for which the driver was placed under arrest.

T.C.A. § 40-10-406(a)(4)(A) (2012).

occurred).

In any event, we conclude that, in light of our remand in which we instructed the trial court to determine whether the Defendant violated the implied consent law, the trial court did not err when it did as we instructed. Under these facts, the trial court, on remand from this Court, clearly had the authority to determine whether the Defendant had violated the implied consent law. The officer stopped the Defendant's vehicle, smelled the odor of alcohol, noted the Defendant's watery, bloodshot eyes, and asked the Defendant to submit to field sobriety tasks. The Defendant performed poorly on those tasks, as evidenced by the videotape introduced, and the officer arrested the Defendant. The officer advised the Defendant of the implied consent law, the consequences of not submitting to a Breathalyzer test, and he read the Defendant a form explaining as much. The Defendant refused to submit to the test. Based upon this evidence, the trial court properly found that the Defendant had violated the implied consent law. The Defendant is not entitled to relief on this issue.

## B. Motion to Suppress

The Defendant next contends that the trial court erred when it failed to conduct a hearing on his motion to suppress because the police officer lacked probable cause to stop him. The Defendant takes issue with the officer's "educated guess" that he was speeding at the time the officer stopped him. The State counters that the Defendant has failed to establish that the trial court erred when it denied his motion to suppress. We again agree with the State.

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews de novo the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23. In reviewing a trial court's ruling on a motion to suppress, an appellate court may consider the evidence presented both at the suppression hearing and at the subsequent trial. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

### 1. Hearing on Motion to Suppress

The Defendant first contends that the trial court erred when it failed to hold a suppression hearing on remand. We disagree. The trial court held a suppression hearing before the first trial, where the Defendant presented evidence, a transcript of which was made a part of the record. Further, the Defendant informed the trial court that, had there been a second suppression hearing, he would have called Officer Miller as his only witness. Officer Miller testified at the second trial, and the Defendant had the opportunity to renew the objections made in his suppression motion and also to cross-examine the officer. The Defendant was, therefore, not prejudiced by the lack of a suppression hearing on remand. We conclude the trial court did not err when it did not hold a suppression hearing on remand.

### 2. Exclusionary Rule

The Defendant contends that the Exclusionary Rule applies to a violation of implied consent. We conclude we need not address this issue. If the Exclusionary Rule does, in fact, apply to the Defendant's case, it would require that the evidence be excluded unless the officer's stop of the Defendant was constitutional. As discussed below, we conclude that the officer had probable cause to stop the Defendant, making our determination as to the applicability of the Exclusionary Rule to this case unnecessary.

### 3. Probable Cause

Finally, the Defendant contends that Officer Miller did not have probable cause to stop his vehicle. The Defendant asserts that "[a] review of the record shows that Officer Miller had no reasonable basis to believe that the Defendant was speeding."

The Fourth Amendment to the United States Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." Our Supreme Court has noted that "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement " *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

One exception to the warrant requirement is an arrest by an officer who has probable cause to believe that a crime has been committed. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). "As a general rule under both the state and federal constitutions, if the police have probable cause to believe that a traffic violation has occurred, [traffic] stops are considered

constitutionally reasonable." *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996); *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997)). In the context of traffic stops, our Supreme Court has stated:

> Probable cause . . . means more than bare suspicion: Probable cause exists where the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. This determination depends upon whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [accused] had committed or was committing an offense. In dealing with probable cause, . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*State v. Day*, 263 S.W.3d 891, 902 (Tenn. 2008) (internal quotation marks and citations omitted).

We conclude the evidence does not preponderate against the trial court's finding that Officer Miller had probable cause to stop the Defendant for speeding. Officer Miller testified that he observed the Defendant traveling at a speed of 53 miles per hour in a 35 mile per hour zone. He noted that the Defendant was traveling faster than the flow of traffic and that his driving was dangerous, considering that it was dark outside, and the roadways were wet. The officer testified about his training in determining the rate of speed of a vehicle, noting that he had attended additional radar training, which required him to accurately assess the rate of speed of 200 vehicles within two miles per hour.

As a general rule, one does not have to be an expert to estimate the speed of a vehicle in ordinary use. Our Supreme Court has upheld a police officer's ability to give opinion testimony on the speed of a motor vehicle based upon the officer's visual observations as a lay witness. *See Blackburn v. Murphy*, 737 S.W.2d 529, 532 (Tenn. 1987). Accordingly, we conclude that the police officer's testimony about the Defendant's rate of speed was properly admitted into evidence. Further, we conclude that the trial court's determination that the officer had probable cause to stop the Defendant's vehicle was proper. As such, the trial court did not err when it denied the Defendant's motion to suppress. The Defendant is not entitled to relief on this issue.

## II. Conclusion

After a thorough review of the record and the applicable law, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE